1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   ROY B. SMITH; VICKI SMITH

                                        NO. CIV. S-04-1245 LKK/GGH
12           Plaintiffs,

13       v.                             **PRETRIAL CONFERENCE ORDER**
                                        **[FINAL]**
14   EAGLE MOLDING COMPANY #1,
     et al,
15
             Defendants.
16   _____/

17   AND RELATED CROSS-ACTIONS

     _____/
18

19       Pursuant to court order, a Pretrial Conference was held in

20   Chambers on February 5, 2007.   ANTHONY J. POIDMORE appeared as

21   counsel for plaintiffs; RICHARD W. FREEMAN, JR. appeared as counsel

22   for defendants; ROBERT R. LUSTER appeared as counsel for the

23   intervenor.   Above-listed counsel are therefore designated as lead

24   trial counsel.[1]   After consideration of the parties' objections

25   _____

26       [1] Eagle Molding has requested that Kevin D. Smith be added as
     lead trial counsel in its objections, even though Mr. Smith was not

                                    1

1 and requests for augmentation, the court makes the following
2 ORDERS:

3                    **I.   JURISDICTION/VENUE**

4      Jurisdiction is predicated upon 28 U.S.C. § 1332 (a). Venue
5 is predicated upon 28 U.S.C. § 1391(a). Both jurisdiction and
6 venue have previously been found to be proper by order of this
7 court. Those findings are confirmed.

8                    **II.   JURY/NON-JURY**

9      Both parties have requested a jury trial and this matter will
10 be tried to a jury.

11                   **III.   UNDISPUTED FACTS**

12 **A.   General Facts:**

13     On September 17, 2002 at about 9:00 a.m., Plaintiff ROY SMITH
14 ("SMITH"), a long haul driver for Maverick Trucking, arrived at the
15 molding manufacturing facilities of EAGLE MOULDING CO. #1 ("EAGLE
16 MOULDING") in Yuba City, California. Plaintiff had been dispatched
17 by his employer to pick up a load of molding to be delivered to the
18 east coast. Smith, a trucker with Maverick for 3 years, had picked
19 up and hauled similar loads on numerous occasions before, but not
20 from EAGLE MOULDING.   SMITH was driving a 2000 Freightliner
21 Conventional Tractor with a 48 foot long spread axle all-aluminum
22 trailer which was 96 inches wide and 60 inches high at the deck.
23 The load SMITH was to pick up consisted of approximately 12-15
24 "bundles" of molding, each of which was about 12 feet long, 4 feet
25

26 present at the pre-trial conference. The request is denied.

2

1  wide, and 2 - 3 feet tall.  Each bundle had been pre-assembled by
2  EAGLE personnel.  The load had been set aside at EAGLE'S loading
3  dock and was to be placed onto SMITH'S truck by EAGLE'S forklift
4  operator, Jose Correa.

5       Jose Correa had been working at EAGLE for about 5 years at
6  that time and had loaded numerous such loads.  Correa placed the
7  load, with some emphasis on providing a solid foundation while
8  giving deference to which bundles would need to come off the truck
9  first.  Correa loaded the truck without incident in about an hour.
10 Correa then assisted SMITH with placing two Zamzow tarps (each of
11 which was 24 feet long and 22 feet wide with 8 foot dropped sides)
12 onto the top of the load. The tarps were 18 ounce vinyl at the top
13 with 14 ounce vinyl on the sides and weighed about 100 pounds.

14      The tarps, used to protect the load, were carried by SMITH
15 rolled into  cylindrical bundles about 2 feet in diameter and 3
16 feet long.  After being placed on top of the load, they would be
17 unfurled by SMITH.  SMITH placed each of the tarps, one at a time,
18 onto the blade of the forklift so that Correa could then lift them
19 up to the top of the load.

20      As Correa loaded the tarps, SMITH stood by the front of the
21 trailer, about 10 feet off to the side.  After both tarps had been
22 placed, Correa drove away on the forklift while SMITH approached
23 the middle of the truck on the passenger side to finish tightening
24 down the last of the straps that secured the load.

25      As SMITH faced the front of the truck to tighten the last
26 strap, he used a wench inserted into the trailer's ratchet.  After

3

1  4 downward ratcheting movements, the forward most tarp fell,
2  hitting SMITH on the head and shoulder, knocking him to the ground.
3  A nearby EAGLE supervisor, Rick Sisco, heard the Plaintiff groaning
4  and responded.   Jose Correa also responded and remained with
5  Plaintiff while Sisco called for emergency assistance.  Sisco also
6  placed two calls at Plaintiff's request on Plaintiff's cell phone
7  - to his dispatcher and to his wife.  Sisco and Correa remained
8  with SMITH until the ambulance personnel arrived.

9      A Bi-County Ambulance and the Yuba City Fire Department
10 responded to EAGLE'S yard.  They found Plaintiff awake and alert,
11 but in pain on the ground.  They examined and stabilized him and
12 removed him to nearby Rideout Hospital. At Rideout, Plaintiff was
13 seen by various doctors, including Dr. Mauk, Dr. Williams, Dr.
14 Dorsey, and Dr. Han.  Plaintiff was diagnosed and kept at a local
15 hotel overnight so that he could be seen the next day.   His
16 discharge diagnosis was acute strain of the thoracic spine.

17     Plaintiff spent two days in California and then returned to
18 Texas with his wife, who had traveled to Yuba City to get him.
19 SMITH'S truck and trailer were removed several days later by other
20 Maverick drivers. After arriving in Texas, Plaintiff was treated
21 by other doctors, including Dr. Mims, Dr. Watters, and Dr.
22 Vanderlick.   There he had eight surgeries beginning in October,
23 2002 and continuing until March, 2007.

24     Smith's employer, Maverick Trucking was insured by Liberty
25 Mutual for purposes of workers compensation.  Liberty Mutual has
26 made certain payments as a result of this accident and is, in

4

1  essence, a second plaintiff, seeking to recover those payments.

2  **B.   Facts Relevant to Negligence Cause of Action:**

3      1.   It is not disputed that ROY Smith was injured while at the

4  yard of EAGLE MOULDING on September 17, 2002.

5      2.   ROY SMITH was acting within the course and scope of his

6  employment with Maverick Trucking.

7      3.   Jose Correa was an employee of EAGLE and was acting in the

8  course and scope of his employment.

9      4.   The accident occurred during the general course of SMITH'S

10  truck being loaded at the EAGLE yard.

11      5.   ROY SMITH was injured when a rolled up tarp fell

12  approximately 12 feet from the top of the load and struck him.

13  **C.   Facts Relevant to Loss of Consortium:**

14      6.   At the time of the incident, ROY and VICKIE SMITH were

15  husband and wife, residing in the State of Texas.

16  **D.   Facts Relevant to Complaint in Intervention:**

17      7.   LIBERTY MUTUAL is the insurance carrier providing Workers'

18  Compensation insurance to Maverick Trucking.

19      8.   LIBERTY MUTUAL has paid workers' compensation benefits to

20  ROY SMITH in an amount to be determined.

21                          **IV.   DISPUTED FACTS**

22  **A.   General Facts:**

23      On September 17, 2002 at about 9:00 a.m., Plaintiff ROY

24  SMITH ("SMITH"), a long haul driver for Maverick Trucking,

25  arrived at the molding manufacturing facilities of EAGLE

26  MOULDING CO. #1 ("EAGLE MOULDING") in Yuba City, California.

                                5

1  Plaintiff had been dispatched by his employer to pick up a load
2  of molding to be delivered to the east coast.  Smith, a trucker
3  with Maverick for 3 years, had picked up and hauled similar
4  loads on numerous occasions before, but not from EAGLE MOULDING.
5  SMITH was driving a 2000 Freightliner Conventional Tractor with
6  a 48 foot long spread axle all-aluminum trailer which was 96
7  inches wide and 60 inches high at the deck.

8      The load SMITH was to pick up consisted of approximately
9  12-15 "bundles" of molding, each of which was about 12 feet
10 long, 4 feet wide, and 2 - 3 feet tall.  Each bundle had been
11 pre-assembled by EAGLE   personnel and was wrapped in plastic
12 to provide some protection against the elements.  The load had
13 been set aside at EAGLE'S loading dock and was to be placed onto
14 SMITH'S truck by EAGLE'S forklift operator, Jose Correa.
15 Jose Correa had been working at EAGLE for about 5 years at that
16 time and had loaded numerous such loads.  Correa placed the load
17 with direction from SMITH, with some emphasis on providing a
18 solid foundation while giving deference to which bundles would
19 need to come off the truck first.  Correa loaded the truck
20 without incident in about an hour.  Correa then assisted SMITH
21 with placing two Zamzow tarps (each of which was 24 feet long
22 and 22 feet wide with 8 foot dropped sides) onto the top of the
23 load. The tarps were 18 ounce vinyl at the top with 14 ounce
24 vinyl on the sides and weighed about 100 pounds.

25     The tarps, used to protect the load, were carried by SMITH
26 rolled into  cylindrical bundles about 2 feet in diameter and 3

6

1  feet long. After being placed on top of the load, they would be
2  unfurled by SMITH. SMITH placed each of the tarps, one at a
3  time, onto the blade of the forklift so that Correa could then
4  lift them up to the top of the load.

5      As Correa loaded the tarps, SMITH stood by the front of the
6  trailer, about 10 feet off to the side. After both tarps had
7  been placed, Correa drove away on the forklift while SMITH
8  approached the middle of the truck on the passenger side to
9  finish tightening down the last of the straps that secured the
10 load.

11     As SMITH faced the front of the truck to tighten the last
12 strap, he used a wench inserted into the trailer's ratchet.
13 After 4 downward ratcheting movements, the forward most tarp
14 fell, hitting SMITH on the shoulder, knocking him to the ground.
15 A nearby EAGLE supervisor, Rick Sisco, heard the Plaintiff
16 groaning and responded. Jose Correa also responded and remained
17 with Plaintiff while Sisco called for emergency assistance.
18 Sisco also placed two calls at Plaintiff's request on
19 Plaintiff's cell phone - to his dispatcher and to his wife.
20 Sisco and Correa remained with SMITH until the ambulance
21 personnel arrived.

22     A Bi-County Ambulance and the Yuba City Fire Department
23 responded to EAGLE'S yard. They found Plaintiff awake and
24 alert, but in pain on the ground. They examined and stabilized
25 him and removed him to nearby Rideout Hospital. At Rideout,
26 Plaintiff was seen by various doctors, including Dr. Mauk, Dr.

7

1  Williams, Dr. Dorsey, and Dr. Han.  Plaintiff was diagnosed and
2  kept at a local hotel overnight so that he could be seen the
3  next day.  His discharge diagnosis was acute strain of the
4  thoracic spine.

5      Plaintiff spent two days in California and then returned to
6  Texas with his wife, who had traveled to Yuba City to get him.
7  SMITH'S truck and trailer were removed several days later by
8  other Maverick drivers.  After arriving in  Texas, Plaintiff was
9  treated by other doctors, including Dr. Mims, Dr. Watters, and
10 Dr. Vanderlick.  There he had five surgeries beginning in
11 October, 2002 and continuing until October, 2003.

12     According to Dr. Thomas Mims of Houston, who has been
13 Plaintiff's primary treating physician and surgeon for the
14 injuries associated with this accident, Plaintiff sustained a
15 fracture of the left C7 facet and C6 foramina.  A myelogram
16 showed nerve compression at C6 7 and C5 6 related to chronic
17 degenerative changes.

18     Plaintiff initially had a posterior bilateral surgery at C5
19 6 and left C 7 (laminectomy and foraminotomy) with resection of
20 the fractured facet area and a posterior cervical fusion with
21 cervical wiring from C5 T1 on October 18, 2002.  He had an
22 incision and draining of a post operatively infected incision on
23 December 8, 2002 with outpatient intravenous antibiotics.
24 Plaintiff continued to complain of neck pain and painful arm
25 symptoms with numbness in his arms.  A subsequent cervical
26 myelogram and CT showed that the posterior fusion had not set up

8

1 properly and that a remaining posterior spinous process eroded
2 through the skin.

3 On July 7, 2003, a spinous process that was protruding
4 through a small skin opening at C7 was resected as were other
5 bony spinous processes at C5 and C6 to keep them from pushing
6 through the thinned out skin area.  Plaintiff was also treated
7 by the infectious disease service with intravenous and oral
8 antibiotics for several weeks.

9 Plaintiff returned to surgery on August 8, 2003 for an
10 anterior fusion at C5 6 and C6 7 and an inner body fusion
11 technique with application of a stabilizing cervical plate.  The
12 posterior fusion was re explored and found not quite solid, but
13 it was starting to set up.  The entire fusion mass was left
14 intact and unaltered so that it could become more solid over the
15 next several months.  On October 10, 2003 Plaintiff had a
16 revision of the posterior spine incision with resection of a
17 prominent bony spur that was drilled smooth and closed.

18 Plaintiff seemed to be improving after the October, 2003
19 surgery, but was then observed to deteriorate.  Plaintiff
20 reported chronic pain in his neck with headaches, arm pain,
21 numbness and tingling, and intermittent weakness in arms and
22 hands.  He complained of episodes of paralysis in his arms and
23 hands.

24 Plaintiff had not worked from the date of the accident
25 (September 17, 2002) until October, 2006.  In October, 2006,
26 Plaintiff obtained part-time employment (20-25 hours per week)

9

1  as a motorcycle mechanic at a local motorcycle repair shop in
2  Texas.  He quit that job recently due to pain.  Plaintiff
3  recently underwent surgery for the insertion of an intrathecal
4  drug delivery system to reduce his pain.

5       Plaintiff claims a loss of income from his employment with
6  Maverick that is estimated at $287,454.  Plaintiff claims future
7  losses of income that are estimated from $700,358 to $1,126,119.
8  Plaintiff and LIBERTY MUTUAL claim that Plaintiff's medical
9  costs from the incident total approximately $200,000.  Liberty
10  Mutual has paid medical bills totaling $125,226, and has paid
11  disability in the amount of $63,137.

12       Plaintiff claims permanent residual limitations from his
13  injuries and that he has suffered depression and chronic pain
14  syndrome with a significant psychological component.  Plaintiff
15  claims that he will require ongoing medical treatment,
16  medication, and perhaps treatment in connection with the
17  surgical insertion of an intrathecal drug delivery device.
18  VICKIE SMITH contends that she has suffered a loss of consortium
19  as a result of ROY SMITH'S injuries.

20       Plaintiff claims that he will never work again as a truck
21  driver.  Plaintiff claims that his future employment will be
22  significantly limited by his injuries and that he may not be
23  able to obtain significant employment at all.  Defendant
24  contends that employment is available to Plaintiff after
25  rehabilitation and training which will allow him to
26  significantly mitigate his future income losses.  Defendant's

10

1  experts will testify that, assuming liability, Plaintiff's
2  losses of future income range from $192,539 to $321,585.

3    **B.   Facts Relevant to Negligence Cause of Action:**

4    1.   Whether or not ROY SMITH or EAGLE directed and
5  controlled the loading operation, and specifically, the loading
6  of the tarps;

7    2.   Whether or not EAGLE and its employee Correa were
8  negligent in placing the tarps on SMITH'S load at the time and
9  place that Correa placed them;

10   3.   Whether or not Correa violated any EAGLE training
11 directive or policy in his placement of the tarps;

12   4.   Whether or not EAGLE or Correa failed to warn SMITH
13 about any aspect of the loading operation;

14   5.   Whether or not SMITH was contributorily negligent for
15 his role in the truck and tarp loading process;

16   6.   Why and how the tarp fell from the top of the load;

17   7.   Whether or not EAGLE was negligent or met the standard
18 of care for its work in the loading of the truck and the tarp;

19   8.   Whether or not Plaintiff SMITH assumed the risks of
20 injuries such as this when participating in employment as a
21 long-haul truck driver;

22   9.   What the specific extent of Plaintiff's injuries were
23 from being struck by the tarp;

24   10.   What the general extent and degree of Plaintiff's
25 injuries have been and what the cost for the reasonably
26 necessary medical treatment has been;

11

1      11.  Whether or not Plaintiff has sustained any permanently
2  debilitating injuries;

3      12.  Whether or not Plaintiff will require further and
4  permanent future medical treatment and what the costs for that
5  medical treatment that is reasonably necessary are;

6      13.  What the amount of Plaintiff's loss of income - past
7  and future - is;

8      14.  Whether or not Plaintiff will work in the future and
9  what potential areas of employment are open to him;

10     15.  Whether or not Plaintiff has mitigated his damages
11  following this incident; and

12     16.  Whether or not Plaintiff SMITH met the standard of
13  care for long-haul truck-drivers in directing and supervising
14  the loading of his truck and the placement of his tarps;

15     **C.**  **Facts Relevant to Loss of Consortium:**

16     17.  Whether or not VICKIE SMITH sustained any loss of
17  consortium, affection, comfort, assistance, or moral support as
18  a result of ROY SMITH'S injuries;

19     18.  Whether or not VICKIE SMITH lost the enjoyment of
20  sexual relations as a result of ROY SMITH'S injuries;

21     19.  The value to be attached to any such loss resulting
22  from the injuries of ROY SMITH; and

23     20.  The amount that the value of any such loss is to be
24  reduced as a result of any comparative fault attributed to ROY
25  SMITH.

26     **D.**  **Facts Relevant to Complaint in Intervention:**

12

1    21.    Whether or not ROY SMITH'S employer, Maverick Trucking
2  was negligent in its training of ROY SMITH on the proper methods
3  for loading and tarp placement on loads such as the load
4  involved in this incident;

5    22.    The extent of payments made for workers' compensation
6  benefits proximately resulting from this incident;

7    23.    Whether or not Plaintiff's pre-existing injuries and
8  medical conditions impacted the extent of medical treatment in
9  this case; and

10   24.    The nature and extent of reasonably necessary future
11 medical payments for Plaintiff's injuries.

12   **V.    NON-DISCOVERY MOTIONS TO THE COURT AND RESOLUTION**

13       Liberty Mutual filed a motion to intervene, which was
14 granted on October 14 ,2004.

15       Plaintiffs filed a motion to modify the scheduling order,
16 which was denied on November 3, 2006.

17               **VI.    DISPUTED EVIDENTIARY ISSUES**

18       Plaintiff disputes the introduction of expert testimony of
19 Paul Herbert and Bradley Closson.  Intervenor joins with
20 plaintiff.

21       Defendant and intervenor dispute the admissibility of (a)
22 evidence concerning Vicki Smith's medical condition and loss of
23 consortium claim, (b) evidence regarding the costs of Roy
24 Smith's future medical care, (c) evidence of a violation of
25 defendant's loading policy, (d) defendant's videotape of a
26 simulated loading, and (e) certain portions of the expert

13

1  opinions of Richard Koch and John Wicks.

2      The parties shall bring on motions in limine to be heard
3  April 23, 2007 at the regular law and motion calendar in
4  accordance with the ordinary policy of the court, thirty-one
5  (31) days before the hearing.  The opposing parties shall
6  respond fourteen (14) days thereafter and the moving parties to
7  close seven (7) days thereafter.

8                  **VII.  SPECIAL FACTUAL INFORMATION**

9      None.

10                       **VIII.  RELIEF SOUGHT**

11     Plaintiff Roy Smith seeks reimbursement of medical costs,
12  lost wages, and pain and suffering.  Plaintiff Vicki Smith seeks
13  damages for loss of consortium.

14                       **IX.  POINTS OF LAW**

15     (a)  The elements, standards, and burden of proof of a
16  claim for negligence and the failure to use reasonable care.

17     (b)  The elements, standards, and burden of proof of a
18  claim for the loss of consortium.

19     (c)  The elements, standards, and burden of proof for the
20  following defenses:  assumption of risk defense, comparative
21  fault, failure to mitigate damages, and uncertain medical
22  damages.

23     (d)  The elements, standards, and burden of proof regarding
24  whether Liberty Mutual is entitled to an offset based on
25  benefits already paid.

26     ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY

                              14

1  ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME
2  IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

3                    **X.   ABANDONED ISSUES**

4      None.

5                    **XI.   WITNESSES**

6      Plaintiff anticipates calling the following witnesses:
7      See attachment "A".

8      Defendant anticipates calling the following witnesses:
9      See attachment "B".

10     Intervenor anticipates calling the following witnesses:
11     See attachment "C".

12     Each party may call a witness designated by the other.

13     A.   No other witnesses will be permitted to testify
14  unless:

15          (1)   The party offering the witness demonstrates that
16  the witness is for the purpose of rebutting evidence which could
17  not be reasonably anticipated at the Pretrial Conference, or

18          (2)   The witness was discovered after the Pretrial
19  Conference and the proffering party makes the showing required
20  in "B" below.

21     B.   Upon the post-Pretrial discovery of witnesses, the
22  attorney shall promptly inform the court and opposing parties of
23  the existence of the unlisted witnesses so that the court may
24  consider at trial whether the witnesses shall be permitted to
25  testify.   The evidence will not be permitted unless:

26          (1)   The witnesses could not reasonably have been

                              15

1   discovered prior to Pretrial;

2          (2)   The court and opposing counsel were promptly
3   notified upon discovery of the witnesses;

4          (3)   If time permitted, counsel proffered the
5   witnesses for deposition;

6          (4)   If time did not permit, a reasonable summary of
7   the witnesses' testimony was provided opposing counsel.

8                 **XII.   EXHIBITS, SCHEDULES AND SUMMARIES**

9         At present, plaintiff contemplates the following by way of
10  exhibits:   See attachment "D".

11        At present, defendant contemplates the following by way of
12  exhibits:   See attachment "E".

13        At present, intervenor contemplates the following by way of
14  exhibits:   See attachment "F".

15     A.   No other exhibits will be permitted to be introduced
16  unless:

17          (1)   The party proffering the exhibit demonstrates
18  that the exhibit is for the purpose of rebutting evidence which
19  could not be reasonably anticipated at the Pretrial Conference,
20  or

21          (2)   The exhibit was discovered after the Pretrial
22  Conference and the proffering party makes the showing required
23  in paragraph "B," below.

24     B.   Upon the post-Pretrial discovery of exhibits, the
25  attorneys shall promptly inform the court and opposing counsel
26  of the existence of such exhibits so that the court may consider

16

1 | at trial their admissibility. The exhibits will not be received
2 | unless the proffering party demonstrates:

3 |     (1) The exhibits could not reasonably have been
4 | discovered prior to Pretrial;

5 |     (2) The court and counsel were promptly informed of
6 | their existence;

7 |     (3) Counsel forwarded a copy of the exhibit(s) (if
8 | physically possible) to opposing counsel. If the exhibit(s) may
9 | not be copied, the proffering counsel must show that he has made
10 | the exhibit(s) reasonably available for inspection by opposing
11 | counsel.

12 |     As to each exhibit, each party is ordered to exchange
13 | copies of the exhibit not later than fifteen (15) days from the
14 | date of this Pretrial Order. Each party is then granted twenty
15 | (20) days to file with the court and serve on opposing counsel
16 | any objections to said exhibits. In making said objections, the
17 | party is to set forth the grounds for the objection. As to each
18 | exhibit which is not objected to, it shall be marked and
19 | received into evidence and will require no further foundation.
20 | Each exhibit which is objected to will be marked for
21 | identification only.

22 |     In addition to electronically filing said objections, if
23 | any, the objections must be submitted by email, as an attachment
24 | in Word or WordPerfect format, to: arivas@caed.uscourts.gov.

25 |     The attorney for each party is directed to appear before
26 | and present an original and one (1) copy of said exhibit to Ana

17

1  Rivas, Deputy Courtroom Clerk, not later than 10:30 a.m. on the
2  date set for trial. All exhibits shall be submitted to the
3  court in binders. Plaintiff's exhibits shall be listed
4  numerically. Defendant's exhibits shall be listed
5  alphabetically. The parties shall use the standard exhibit
6  stickers provided by the court: pink for plaintiff and blue for
7  defendant.

8              **XIII.   DISCOVERY DOCUMENTS**

9      No party has tendered any discovery documents.

10             **XIV.   FURTHER DISCOVERY OR MOTIONS**

11     None.

12             **XV.   STIPULATIONS**

13     None.

14             **XVI.   AMENDMENTS/DISMISSALS**

15     None.

16             **XVII.   FURTHER TRIAL PREPARATION**

17     A.    Counsel are directed to Local Rule 16-285 regarding
18  the contents of and the time for filing trial briefs.

19     B.    Counsel are informed that the court has prepared a set
20  of standard jury instructions. In general, they cover all
21  aspects of the trial except those relating to the specific
22  claims of the complaint. Accordingly, counsel need not prepare
23  instructions concerning matters within the scope of the prepared
24  instructions. A copy of the prepared instructions is given to
25  the parties at the Pretrial Conference.

26     B.    For all cases tried to the court, counsel are ordered

18

1 to file and serve Proposed Findings of Fact and Conclusions of
2 Law not later than ten (10) days prior to the first date of
3 trial.

4     C.    Counsel are further directed that their specific jury
5 instructions shall be filed fourteen (14) calendar days prior to
6 the date of trial. As to any instructions counsel desires to
7 offer, they shall be prepared in accordance with Local Rule 51-
8 163(b)(1) which provides:

9         "Two copies of the instructions shall be submitted.
10        One copy shall be electronically filed as a .pdf
11        document and shall contain each instruction on a
12        separate page, numbered and identified as to the party
13        presenting it. Each instruction shall cite the
14        decision, statute, ordinance, regulation or other
15        authority supporting the proposition stated in the
16        instruction."

17        The second copy ("jury copy") shall be submitted by e-mail
18 to lkkorders@caed.uscourts.gov.

19        **In addition, counsel shall provide copies of proposed forms**
20 **of verdict, including special verdict forms, at the time the**
21 **proposed jury instructions are filed with the court.**

22     D.    It is the duty of counsel to ensure that any
23 deposition which is to be used at trial has been filed with the
24 Clerk of the Court. Counsel are cautioned that a failure to
25 discharge this duty may result in the court precluding use of
26 the deposition or imposition of such other sanctions as the

19

1  court deems appropriate.

2      E.    The parties are ordered to file with the court and
3  exchange between themselves not later than one (1) week before
4  the trial a statement designating portions of depositions
5  intended to be offered or read into evidence (except for
6  portions to be used only for impeachment or rebuttal).

7      F.    The parties are ordered to file with the court and
8  exchange between themselves not later than one (1) week before
9  trial the portions of answers to interrogatories which the
10 respective parties intend to offer or read into evidence at the
11 trial (except portions to be used only for impeachment or
12 rebuttal).

13     G.    The court has extensive audiovisual equipment
14 available.  Any counsel contemplating its use shall contact the
15 court's Telecommunications Manager, Andre Carrier, at (916) 930-
16 4223, at least two weeks in advance of trial to receive the
17 appropriate training.

18              **XVIII.   SETTLEMENT NEGOTIATIONS**

19     A Settlement Conference is **SET** before the Honorable David
20 F. Levi on March 30, 2007, at 2:00 p.m. Counsel are directed to
21 submit settlement conference statements to the settlement judge
22 **not later than seven (7) days prior to the conference.**  At
23 counsel's option, such statements may be submitted in confidence
24 pursuant to Local Rule 16-270(d).

25     Each party is directed to have a principal capable of
26 disposition at the Settlement Conference or to be fully

                            20

1 authorized to settle the matter on any terms and at the
2 Settlement Conference.

3                          **XIX.  AGREED STATEMENTS**

4        None.

5                          **XX.  SEPARATE TRIAL OF ISSUES**

6        None.

7              **XXI.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

8        None.

9                          **XXII.  ATTORNEYS' FEES**

10       None.

11                         **XXIII.  MISCELLANEOUS**

12       None.

13             **XXIV.  ESTIMATE OF TRIAL TIME/TRIAL DATE**

14       Trial by jury is **SET** for May 8, 2007, at 10:30 a.m., in
15 Courtroom No. 4.  The parties represent in good faith that the
16 trial will take approximately twelve to fourteen (12-14) days.

17       Counsel are to call Ana Rivas, Courtroom Deputy, at (916)
18 930-4133, one week prior to trial to ascertain status of trial
19 date.

20             **XXV.  MODIFICATIONS TO PRETRIAL ORDER**

21       The parties are reminded that pursuant to Federal Rule of
22 Civil Procedure 16(e), this order shall control the subsequent
23 course of this action and shall be modified only to prevent
24 manifest injustice.

25 ////

26 ////

21

1    IT IS SO ORDERED.

2    DATED: March 6, 2007.

3

4                                    _____
                                     LAWRENCE K. KARLTON
5                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

22

Plaintiffs' Witnesses:

Roy B. Smith
Vicki Smith
Jose Correa
Rick Sisco
Letha Haymes
Robert Stoddard
Tony Dinita
Kevin P. McCool
Dr. Thomas Mims, M.D.
Dr. William Watters, III, M.D.
Dr. Mary Ellen Vanderlick
Dr. Wenchian Han, M.D.
Dr. Louis M. Mauk, M.D.
Dr. George Williams, M.D.
Dr. Daniel Dorsey, M.D.
Dr. Laura Anderson, M.D.
Dr. Stephen Irving Mann, M.D.
Dr. John Wicks, PhD
Richard Koch
Theodore Mitchel, CPA
Dean Newell

ATTACHMENT "A"

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1031 GALAXY WAY, SUITE 306
CONCORD, CALIFORNIA 94520-5726
Telephone 925 356 1141 • Fax 925 356 1145

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>EXHIBIT A</u>
<u>To Separate Pre-Trial Statement of Eagle Moulding Co. #1</u>

<u>TRIAL WITNESS LIST</u>

1. Parties

   a. Roy Smith

   b. Vickie Smith

   c. Eagle Moulding Employees

      i.   Jose Correa                    *VI.   Rick Sisco*

      ii.  Kevin McCool

      iii. Chip Vipperman

      iv.  Charlie Pascuzzi

      v.   Richard Mason

2. Bi-County Ambulance Service Personnel

   a. Ian Huntley

   b. Scott Barber

3. Yuba City Fire Department Personnel

   a. Robert Stoddard

   b. Tony DiVita

4. Rideout Memorial Hospital Staff

   a. Daniel Dorsey, M.D.

   b. Wenchian Han, M.D.

   c. George Williams, M.D.

   d. Edith L. Dennis

5. Maverick Transportation Employees

   a. Dean Newell

   b. Deborah Mitchell

   c. Letha Haymes

1    d. Edward Huffman

2    e. Billy Daniels

3  6. Plaintiffs' Treating Physicians

4    a. Thomas Mims, M.D.

5    b. William Watters, M.D.

6    c. Mary Ellen Vanderlick, M.D.

7    d. Nir Stanietzky, M.D.

8    e. Van Pavlik, P.T.

9    f. Ahmed Khalifa, M.D.

10    g. Manjit Randhawa, M.D.

11    h. Thomas Abrahms, M.D.

12  7. Experts

13    a. Defense

14      i. Laura Anderson, M.D.

15      ii. Stephen Mann, M.D.

16      iii. Richard Rubenstein, M.D.

17      iv. William Hooker, Ph.D.

18      v. Stuart Pickel, M.D.

19      vi. Bradley Closson

20      vii. Paul Herbert

21      viii. Jerald Udinsky, Ph.D.

22      ix. Alan Nelson

23    b. Plaintiff

24      i. Theodore Mitchel, CPA

25      ii. Richard Koch, Ed.D.

26      iii. John Wicks, Ph.D.

27    c. Intervenor Liberty Mutual

28      i. Thomas Abrams, M.D.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1001 GALAXY WAY, SUITE 308
CONCORD, CALIFORNIA 94520-5705
TELEPHONE 925.295.1141 • FAX 925.295.1145

Case 2:04-cv-01245-LKK-GGH    Document 70    Filed 03/06/07    Page 26 of 35
Case 2:04-cv-01245-LKK-GGH    Document 60    Filed 02/08/2007    Page 26 of 35
Case 2:04-cv-01245-LKK-GGH    Document 53    Filed 01/29/2007    Page 17 of 23

1            **ii. Linda Beckelman**

2      **8. Miscellaneous**

3          **a. Robert Pieziali**

4          **b. Randy Rymel**

1  Robert Luster (Bar # 120633)

2  Brwonwood, Chazen & Cannon
3  525 B Street, Suite 1300
   San Diego, CA 92101
   (619) 744-6845

4

5  Attorneys for Liberty Mutual Insurance Company, INTERVENOR

6

7

8           UNITED STATES DISTRICT COURT

9     EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

10

11  ROY B. SMITH; VICKI SMITH,          CASE NO. CIV.S-04-1245 LKK
                                        GGH
12            Plaintiffs,
                                        WITNESS LIST OF INTERVENOR,
13       v.                             LIBERTY MUTUAL

14  EAGLE MOLDING COMPANY #1,           DATE: February 5, 2007
    ET AL.,                             TIME: 2:00 P.M.
15
            Defendants.                 Complaint Filed: 6/29/04
16
                                        [Assigned to Judge Lawrence K. Karlton,
17  AND RELATED ACTIONS                 Courtroom 4]

18

19       Intervenor Liberty Mutual ("INTERVENOR") hereby submits its

20  Separate Witness List pursuant to Rule 16-281 of the Local Rules for the

21  United States District Court for the Eastern District of California and the

22  Court's Scheduling Order.

23       1. Roy Smith

24       2. Vicki Smith

25       3. Dean Newell

26       4. Richard Sisco

27       5. Jose Correa

28       6. Kevin McCool

LEGAL:5488-052/681735.1          -1-
SEPARATE PRETRIAL CONFERENCE STATEMENT OF DEFENDANT EAGLE MOULDING CO.#1

Received at: 2:46PM, 2/6/2007

*ATTACHMENT "C"*

1    7. Dr. Manjit Randhawa

2    8. Linda Beckelman

3    9. Dr. Thomas Mims

4    10.    Dr. William Waters

5    11.    Dr. Abraham Thomas

6

7

8    DATED: January        Brownwood, Chazen &
     ___, 2007             Cannon

9    2·6·07

10                         By: _____

11                              Robert Luster

12                         Attorneys for Liberty Mutual
                           Insurance Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Received at: 2:46PM, 2/6/2007

Plaintiffs' Exhibits  Exhibits include:

1) Plaintiff's medical records
2) W-2s and wage information
3) The supporting documentation from his trucking business concerning expenses, income and profit
4) X-rays and other radiographic studies of plaintiff
5) Model of the human spine
6) Photographs of the truck in question and the same or similar tarps
7) Photographs of plaintiff's injuries and surgical scars
8) Report regarding past and future wage loss prepared by Theodore Mitchel, CPA
9) Report of testing and employability prepared by and under the direction of Richard Koch
10) Report of John Wicks, PhD

12. Discovery Documents - None contemplated at this time.
13. Futher Discovery or Motions - None known.
14. Amendments - Dismissals None contemplated
15. Stipulations - None Known
16. Settlement Negotiations The court has indicated it will be setting a settlement conference

at the final pre-trial conference and such a settlement conference would likely be helpful.
17. Agreed Statements: There is no agreed statement of facts.
18. Separate Trial of Issues No separate trial of issues is advisable.
19. Impartial Experts - There are no impartial experts.
20. Attorney's Fees – Attorney's fees are not sought.
21. Trial Exhibits - No special handling of trial exhibits is required but retention of exhibits

pending appeal is advisable.

22. Miscellaneous - No other suggestions appear appropriate. There are no known claims of privilege.

ATTACHMENT "D"

Case 2:04-cv-01245-LKK-GGH   Document 70   Filed 03/06/07   Page 30 of 35
Case 2:04-cv-01245-LKK-GGH   Document 60   Filed 02/08/2007   Page 30 of 35
Case 2:04-cv-01245-LKK-GGH   Document 53   Filed 01/29/2007   Page 18 of 23

1

**EXHIBIT B**
**To Separate Pre-Trial Statement of Eagle Moulding Co. #1**

2

3

4

**TRIAL EXHIBIT LIST**

5   Deposition Transcripts

6       A.    Roy Smith

7       B.    Vickie Smith

8       C.    Jose Correa

9       D.    Kevin McCool

10      E.    Robert Stoddard

11      F.    Anthony DiVita

12      G.    Daniel Dorsey, M.D.

13      H.    Wenchian Han, M.D.

14      I.    George Williams, M.D.

15      J.    Edith L. Dennis

16      K.    Richard Koch, Ed.D.

17      L.    Theodore Mitchel, CPA

18      M.    John Wicks, Ph.D.

19      N.    Paul Herbert

20      O.    Bradley Closson

21      P.    Thomas Mims, M.D.

22      Q.    Ahmed Khalifa, M.D.

23      R.    Manjit Randhawa, M.D.

24      S.    Nir Stanietzky, M.D.

25      T.    Mary Ellen Vanderlick, M.D.

26      U.    Van Pavlik, P.T.

27      V.    Dean Newell

28      W.    Deborah Mitchell

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1801 GALAXY WAY, SUITE 308
CONCORD, CALIFORNIA 94520-5705
TELEPHONE 925.246.1141 • FAX 925.246.1143

Case 2:04-cv-01245-LKK-GGH   Document 70   Filed 03/06/07   Page 31 of 35
Case 2:04-cv-01245-LKK-GGH   Document 60   Filed 02/08/2007   Page 31 of 35
Case 2:04-cv-01245-LKK-GGH   Document 53   Filed 01/29/2007   Page 19 of 23

1    X.    Linda Beckelman

2    Y.    Thomas Abrahms, M.D.

3    Z.    Edward Huffman

4    2A.   Billy Daniels

5    2B.   Randy Rymel

6  Eagle Moulding Co. #1 Records

7    2C.   Safety meeting records

8    2D.   Certificate of forklift training for Jose Correa

9    2E.   Industrial Truck (forklift) Training Verification form for Jose

10  Correa

11    2F.   Forklift training materials

12    2G.   Load documents for September 17, 2002

13    2H.   Eagle Moulding Injury and Illness Prevention Program (IIPP)

14    2I.   OSHA Forms For Recording Work-Related Injuries and Illnesses

15  Yuba City Fire Department Records

16    2J.   9/17/02 report of fire department responders Stoddard and

17  DiVita

18  Rideout Memorial Hospital Records

19    2K.   9/17/02 EMT report from Rideout Emergency Room

20    2L.   9/17/02 – 9/18/02 Emergency Room reports of doctors Dorsey,

21          Han, Williams, and Mauk

22    2M.   Radiology records

23    2N.   Records of medical treatment at Rideout Memorial Hospital

24  Maverick Transportation Records

25    2O.   Driver orientation materials

26    2P.   Safety Rules and Procedures

27  Medical reports of Plaintiffs' Treating Physicians

28    2Q.   Thomas Mims, M.D.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1001 GALAXY WAY, SUITE 208
CONCORD, CALIFORNIA 94520-5705
TELEPHONE 925.295.1141 • FAX 925.296.1145

Case 2:04-cv-01245-LKK-GGH    Document 70    Filed 03/06/07    Page 32 of 35
Case 2:04-cv-01245-LKK-GGH    Document 60    Filed 02/08/2007    Page 32 of 35
Case 2:04-cv-01245-LKK-GGH    Document 53    Filed 01/29/2007    Page 20 of 23

1    2R.   Mary Ellen Vanderlick, M.D.

2    2S.   William Watters, M.D.

3    2T.   Ahmed Khalifa, M.D.

4    2U.   Manjit Randhawa, M.D.

5    2V.   Thomas Abrahms, M.D.

6    2W.   Evaluation/Report of Van Pavlik, P.T.

7    2X.   Records of medical treatment at St. Luke's Hospital

8    2Y.   Records of medical treatment at University of Texas Medical

9    Center

10   Other Exhibits

11   2Z.   Video-tape of deposition of Roy Smith

12   3A.   Site inspection photographs

13   3B.   DVD of Piziali site inspection

14   3C.   Safety Standards For Rough Terrain Forklift Trucks

15   3D.   Manufacturer's Operator Instruction Manual (forklift) and "Rules

16         for Safe Industrial Truck Operation"

17   Defense Expert Reports

18   3E.   Laura Anderson, M.D.

19   3F.   Stephen Mann, M.D.

20   3G.   Richard Rubenstein, M.D.

21   3H.   William Hooker, Ph.D.

22   3I.   Stuart Pickel, M.D.

23   3J.   Bradley Closson

24   3K.   Paul Herbert

25   3L.   Jerald Udinsky, Ph.D.

26   3M.   Alan Nelson

27   Plaintiff Expert Reports

28   3N.   Theodore Mitchel, CPA

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1001 GALAXY WAY, SUITE 300
CONCORD, CALIFORNIA 94520-5726
TELEPHONE 925.296.1140 • FAX 925.296.1145

1      3O.   Richard Koch, Ed.D.

2      3P.   John Wicks, Ph.D.

3   Intervenor Expert Reports

4      3Q.   Thomas Abrams, M.D.

5      3R.   Linda Beckelman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1001 GALAXY WAY, SUITE 206
CONCORD, CALIFORNIA 94520-5726
TELEPHONE 925.256.1441 ♦ FAX 925.256.1145

1

2  Robert Luster (Bar # 120633)

3  Brwonwood, Chazen & Cannon
   525 B Street, Suite 1300
4  San Diego, CA 92101
   (619) 744-6845
5

6  Attorneys for Liberty Mutual Insurance Company, INTERVENOR

7

8

9              **UNITED STATES DISTRICT COURT**

10    **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION**

11

12  ROY B. SMITH; VICKI SMITH,            | CASE NO. CIV.S-04-1245 LKK GGH

13              Plaintiffs,               | **EXHIBIT LIST OF INTERVENOR, LIBERTY MUTUAL**

14       v.

15  EAGLE MOLDING COMPANY #1,             | DATE: February 5, 2007
    ET AL.,                              | TIME: 2:00 P.M.
16
                                          | Complaint Filed: 6/29/04
17              Defendants.
                                          | [Assigned to Judge Lawrence K. Karlton,
18  AND RELATED ACTIONS                  | Courtroom 4]

19

20

21

22

23       Intervenor Liberty Mutual ("INTERVENOR") hereby submits its

24  Separate Witness List pursuant to Rule 16-281 of the Local Rules for the

25  United States District Court for the Eastern District of California and the

26  Court's Scheduling Order.

27       1. Claims documentation of itemized payments

28       2. Maverick Trucking training program documents

                        *ATTACHMENT "F"*

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1001 GALAXY WAY, SUITE 108
CONCORD, CALIFORNIA 94520-5735

Case 2:04-cv-01245-LKK-GGH   Document 70   Filed 03/06/07   Page 35 of 35
Case 2:04-cv-01245-LKK-GGH   Document 60   Filed 02/08/2007   Page 35 of 35
Case 2:04-cv-01245-LKK-GGH   Document 55   Filed 01/29/2007   Page 2 of 2

1

2

3. Maverick Trucking's personnel file for Roy

3

4. Photo of truck (exhibit B24, Smith depo 3/8/06)

4

5. Photo of truck (exhibit B25, Smith depo 3/8/06)

5

6. Photo of truck (exhibit B26, Smith depo 3/8/06)

6

7. Smith Log from 3/8/06 deposition (exhibit c)

7

8. Certificate of title (exhibit d, Smith 3/8/06 deposition)

8

9. Welcome Home to Maverick pamphlet

9

10.   Maverick Transportation Driver Manual

10

11.   exemplar tarp

11

12

13   DATED: January          Brownwood, Chazen &
14   ——, 2007                Cannon
                             By: _____
15                               Robert Luster
16                           Attorneys for Liberty Mutual
                             Insurance Company
17

18

19

20

21

22

23

24

25

26

27

28

*LEGAL:5488-052/881738.1*                              -2-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
6001 GALAXY WAY, SUITE 308
CONCORD, CALIFORNIA 94520-5726